## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

VALERIE BUNKER,

    Plaintiff,

    v.

THE KEY SCHOOL, INCORPORATED, *et al.*,

    Defendants.

Case No. MJM-23-2662

## MEMORANDUM

Plaintiff Valerie Bunker brings this action against The Key School, Incorporated and The Key School Building Finance Corporation (collectively, the "Key School" or "Defendants"), alleging negligence, negligent hiring of employees, and negligent supervision and retention of employees. Compl. (ECF No. 1). Plaintiff's claims arise from the Key School's alleged failure to protect Plaintiff from sexual and emotional abuse committed by Key School teachers while Plaintiff was in high school in the 1970s. *Id.* Plaintiff filed her Complaint in this Court on October 1, 2023, under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Id.*

Currently pending are four motions: Defendants' Motion to Stay (ECF No. 12); Defendants' Motion to Dismiss (ECF No. 20); Plaintiff's Motion to Certify a Question of Law to the Maryland Supreme Court (ECF No. 13); and Plaintiff's Motion for Rule 5.1(b) Certification (ECF No. 26). The motions are fully briefed, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Court will GRANT Plaintiff's Motions, will GRANT Defendants' Motion to Stay following certification of a question, and will DENY without prejudice Defendants' Motion to Dismiss.

## I.   BACKGROUND

### A.  Factual Background

Plaintiff Valerie Bunker, a resident of Oregon, attended the Key School, a private school in Annapolis, Maryland, for high school from 1973 through 1977. Compl. (ECF No. 1) ¶¶ 2, 4. She alleges that, during this time, she was sexually and emotionally abused by Key School teachers Eric Dennard and Vaughn Keith, both of whom are now deceased. *Id.* ¶¶ 2, 35. Plaintiff alleges the Key School "fostered, and even encouraged[,]" Key School teachers to engage in a "wide[] pattern of serialized child abuse." *Id.* ¶ 3. She alleges the school's "de-emphasized rules and boundaries" between teachers and students resulted in a "lack of safeguards [that] permitted child predators to flourish." *Id.* ¶ 5. According to Plaintiff, the Key School was "aware of the abuse inflicted on its students, yet consistently and repeatedly refused to intervene." *Id.* ¶ 10. She specifically states that several teachers and faculty, including the head of the high school,[1] "attended highly sexualized, alcohol and drug-drenched parties" with students. *Id.* ¶ 76. As an exhibit to her Complaint, Plaintiff attaches a January 2019 investigative "Report to the Board of Trustees of Key School," which details witness reports of sexual misconduct by various Key School teachers and administrators, including Dennard and Keith. ECF No. 1-3. Plaintiff alleges her abuse "physically and psychologically damaged" her and caused her to develop a serious alcohol abuse disorder. Compl. ¶¶ 71–72, 75.

### B.  The Maryland Child Victims Act of 2023

The Maryland Child Victims Act of 2023 (the "CVA") took effect on October 1, 2023, the date this action was filed. Md. Stat. Ann., Cts. & Jud. Proc. § 5-117. The CVA provides that, "notwithstanding any time limitation under a statute of limitations, a statute of repose, the

---

[1]    The Complaint variously refers to the "head of" the Key School as "Headmaster" or "head of school." *See, e.g.*, Compl. ¶¶ 57–58, 114.

Maryland Tort Claims Act, the Local Government Tort Claims Act, or any other law, **an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor may be filed at any time**." *Id.* at § 5-117(b) (emphasis added).

The parties contest the constitutionality of the CVA, which has not been addressed by the Maryland Supreme Court, and contest the appropriate procedural mechanism by which this Court should proceed. Defendants move to stay the case "pending the Maryland state appellate courts' resolution of whether the [CVA] is constitutional or unconstitutional." ECF No. 12 at 1. Plaintiff moves to certify a question of law to the Supreme Court of Maryland "to immediately send those very issues [of constitutionality] to Maryland's highest court." ECF No. 13 at 3. Plaintiff similarly moves for this Court to "certify to the [Attorney General of Maryland] that a statute has been questioned." Fed. R. Civ. P. 5.1(b); *see also* ECF No. 26. The parties oppose each other's motions. *See* ECF Nos. 18, 19.

## II.   LEGAL STANDARD

### A.  Motion to Stay

Federal courts possess an "inherent authority . . . to stay an action pending the outcome of parallel proceedings in another court . . . ." *United States v. Oliver*, 878 F.3d 120, 124 (4th Cir. 2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis*, 299 U.S. at 254). "[D]eciding whether to stay proceedings . . . 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (quoting *Landis*, 299 U.S. 248, 254–55). To determine whether to grant a motion

to stay proceedings, the court considers "the length of the requested stay, the hardship that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495, 501–502 (D. Md. 2013) (citing *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (D. Md. Aug. 25, 2011)); *see also U.S. Liab. Ins. Co. v. Krawatsky*, Civ. No. JKB-21-0538, 2022 WL 888885, at *6 (D. Md. Mar. 25, 2022) (considering judicial economy and the hardship and/or prejudice to the parties in determining whether to stay proceedings) (quoting *Landress v. One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

### B.  Motion to Certify a Question of Law

Under the Maryland Certification of Questions of Law Act, a federal district court may certify a question of law to the Supreme Court of Maryland. Md. Stat. Ann., Cts. & Jud. Proc.§ 12-603 (the "Certification Act"). The Certification Act provides that:

> The Court of Appeals of this State may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State.

*Id.* The purpose of the Certification Act is "to promote the *widest possible use* of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law." *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1056 (Md. 2010) (quoting Uniform Certification of Questions of Law Act § 3 cmt. (1995)) (alterations in original). The decision of

whether to certify a question of law "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

The decision to certify depends on several considerations, "including whether certification would 'save time, energy, and resources' and 'build cooperative judicial federalism.'" *Md. Shall Issue, Inc. v. Montgomery Cnty., Md.*, Civ. No. TDC-21-1736, 2023 WL 3276497, at *4 (D. Md. May 5, 2023) (quoting *Lehman Bros.*, 416 U.S. at 391). "Just because a question of law qualifies for certification, however, does not mean the Court must certify it." *Doe v. Chesapeake Medical Solutions, LLC*, Civ. No. SAG-19-2670, 2020 WL 917061 (D. Md. Feb. 26, 2020) (citing *Lehman Bros.*, 416 U.S. at 390–91).

## III.   DISCUSSION

The availability of relief for Plaintiff's negligence claims in this matter may ultimately depend upon the constitutionality of the CVA. In their motion to dismiss, Defendants contend that the CVA violates Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution by attempting to repeal Md. Code Ann., Cts. & Jud. Proc. § 5-117(d) (2017) (amended 2023) (hereinafter, "§ 5-117(d) (2017)"). ECF No. 20-1 at 6–7. According to Defendants, § 5-117(d) (2017) was a statute of repose that conferred upon non-perpetrator defendants a substantive right against liability for "abuse claims that were not brought within 20 years after the plaintiffs reaching the age of majority." *Id.* at 6. Defendants argue that their substantive right could not be withdrawn once vested. *Id.* at 7. In her opposition to the motion to dismiss, Plaintiff contends that § 5-117(d) (2017) was a statute of limitations rather than a statute of repose and, therefore, does not create a vested right. ECF No. 21-1 at 5–6. If Defendants are correct that the CVA violates the Maryland Constitution, then Plaintiff's negligence claims may be time barred.

The question of the CVA's constitutionality under the Maryland Constitution is appropriate for certification to the Maryland Supreme Court. An answer to this question would be determinative of an issue in the instant case, and, currently, no controlling appellate decision supplies such an answer.

Defendants' argument that certifying a question will circumvent the state court process is unconvincing. *See* ECF No. 19-1 at 3. They concede that the issue will ultimately reach the Maryland Supreme Court in the course of litigation in state court but offer no reason for this Court to wait for that to happen when the potentially more expedient and direct option of certifying the question is available. *See, e.g.*, *Doe v. Catholic Relief Services*, 618 F. Supp. 3d 244, 259 (D. Md. 2022) (certifying a question regarding the proper interpretation of the Maryland Fair Employment Practices Act's religious exemption compared to Title VII following the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)); *Gardner v. Ally Financial Inc.*, 488 Fed. App'x. 709, 713 (4th Cir. 2012) (finding that the district court should have certified a question where it improperly "relied upon decisions that [were] factually distinct from the case at hand" to decide the case).[2]

---

[2] Defendants' arguments against certification rely heavily on *Maryland Shall Issue, Inc. v. Montgomery County*, but the instant case is easily distinguishable. 2023 WL 3276497, at *4. In *Maryland Shall Issue*, the Court found that "the matters at issue [were] not simply questions of law that may be determinative in the present case but instead consist[ed] of three specific causes of action under state law." *Id.* at *4. Accordingly, the Court found that, "where the [state court] had already begun the process of adjudicating [the plaintiff's] claims, . . . remand best serve[d] the interests of both judicial economy and cooperative judicial federalism." *Id.* Conversely, here, the matter at issue is "simply [a] question[] of law" that will be determinative in the present case. Both parties acknowledge that the CVA's constitutionality will ultimately be addressed by the Maryland Supreme Court. *See* ECF No. 19-1 at 19; ECF No. 24-1 at 4. Thus, certifying a question will not "circumvent the application of the full state court process," but will instead "'save time, energy, and resources' and 'build cooperative judicial federalism.'" *Id.* (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

In a recent case, Chief District Judge James K. Bredar of this Court certified a question to the Maryland Supreme Court on the same issue briefed by the parties in this case. *Doe v. The Church of Jesus Christ of Latter-Day Saints*, ("*Doe v. LDS*"), Civ. No. JKB-23-02900, ECF No. 29. In that case, the plaintiff sued for damages arising from sexual abuse that allegedly occurred in the 1980s. *Id.* at 1. The parties agreed that the plaintiff's claims would be time barred but for the CVA. *Id.* at 2. Judge Bredar found certification was warranted because

> there has been no appellate decision on the CVA's constitutionality—unsurprisingly, as the statute is less than a year old. Principles of federalism, comity, and judicial economy strongly counsel in favor of certification when—as here—a federal court is asked to determine whether a newly-enacted state statute violates a state constitution. *See Lehman Bros.*, 416 U.S. at 391 (noting that the use of the certification process will often "save time, energy, and resources and help[] build a cooperative judicial federalism").

*Id.* at 3. On April 5, 2024, Judge Bredar certified the following question: "Does the [CVA] constitute an impermissible abrogation of a vested right in violation of Article 24 of the Maryland Declaration of Rights?" *Doe v. LDS*, ECF No. 32 at 2.

The present case poses the same question as *Doe v. LDS*. In this case, however, Defendants also argue that the CVA violates Article III, Section 40 of the Maryland Constitution. ECF No. 20-1 at 26 (citing *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1075–76 (Md. 2002) (recognizing that retroactive civil statutes affecting vested rights may invoke the takings clause); *see also Schappelle v. Roman Catholic Archdiocese of Washington*, No. C-15-CV-23-3696 (Md. Cir. Ct. Montgomery Cnty., April 1, 2024) (finding that CVA "violates Article 24 of the Maryland Declaration of Rights and the Maryland Constitution, Article III, Section 40 . . . .").

Accordingly, the Court proposes certifying the following question of law to the Maryland Supreme Court:

> Does the Maryland Child Victims Act of 2023 (Md. Code Ann., Cts. & Jud. Proc. § 5-117) constitute an impermissible abrogation of a vested right in violation of Article 24 of the Maryland Declaration of Rights and/or Article III, Section 40 of the Maryland Constitution?

The parties shall have 14 days from the date of this Memorandum to file any objections to the proposed question.

Because the CVA's constitutionality is at issue, this Court also "must . . . certify to the [Attorney General of Maryland] that a statute has been questioned." Fed. R. Civ. P. 5.1(b) (citing 28 U.S.C. § 2403); *see also* 28 U.S.C. § 2403 (providing that, in any action in which a State is not a party, if the constitutionality of a state statute "affecting the public interest" is challenged, "the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene . . . .").

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Certify a Question of Law to the Maryland Supreme Court (ECF No. 13), Plaintiff's Motion for Rule 5.1(b) Certification (ECF No. 26), and Defendants' Motion to Stay (ECF No. 12) will be granted. The Court shall certify a question of law to the Maryland Supreme Court and shall certify to the Attorney General of Maryland that the constitutionality of the CVA has been questioned. This matter will be stayed pending a decision from the Maryland Supreme Court regarding the certified question. Defendants' Motion to Dismiss (ECF No. 20) will be denied without prejudice to renewal at an appropriate time after the stay is lifted.

A separate Order will issue.


April 11, 2024                                    _____/S/_____
                                                  Matthew J. Maddox
                                                  United States District Judge

8